**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| CHAD MOORE, Individually and on Behalf of All Others Similarly Situated, | CASE NO: 4:20-cv-00591 |
| v. | |
| MAVERICK NATURAL RESOURCES, LLC | |

**COLLECTIVE ACTION COMPLAINT**

### SUMMARY

1.      Plaintiff Chad Moore brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") against Defendant Maverick Natural Resources, LLC (Maverick).

2.      Moore and the other workers like him ("Putative Class Members") regularly worked for Maverick in excess of 40 hours each week.

3.      These workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4.      Instead, these workers were paid a day rate. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Maverick's corporate headquarters are located in this district and division in Houston, Texas. *See* https:/www.mavresources.com/companybackground (last visited 2/18/2020).

**THE PARTIES**

7.     Moore has performed work for Maverick as a welding inspector from approximately June 2019 through November 2019.

8.     Throughout his time with Maverick, he was paid a day-rate with no overtime compensation.

9.     His consent to be a party plaintiff is attached as Exhibit A.

10.     Moore brings this action on behalf of himself and all other similarly situated workers paid through Maverick's day-rate system.

11.     Each of these workers received a flat amount for each day worked, without overtime pay.

12.     The class of similarly situated workers ("Putative Class Members") consists of:

**Current and former inspectors working for or on behalf of Maverick Natural Resources, LLC and paid a day-rate without overtime during the past three years.** (the Putative Class Members).

13.     Maverick is a corporation doing business throughout the United States. Maverick may be served by serving its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

**COVERAGE UNDER THE FLSA**

14.     For at least the past three years, Maverick has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15.     For at least the past three years, Maverick has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16.     For at least the past three years, Maverick has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce

or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

17.     For at least the past three years, Moore and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

### FACTS

18.     Maverick is a private oil and gas company headquartered in Houston that owns and operates "diverse producing assets across the U.S.."[1]

19.     To continue operating, Maverick relies on inspectors.

20.     While exact job titles and job duties may differ, these inspectors are subjected to the same or similar illegal pay practices for similar work.

21.     Specifically, Maverick paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

22.     For example, Moore worked for Maverick from June 2019 through November 2019 as a welding inspector for the construction of a saltwater disposal facility near Tyler, Texas. He also spent time inspecting other pipelines for Maverick during this timeframe.

23.     As a welding inspector, Moore's primary job duties included inspecting the welding on construction projects, oil and gas pipelines, storage facilities, and other projects as needed.

24.     Moore did not have any supervisory duties.

25.     Moore did not hire for fire employees.

---

[1] https://www.mavresources.com/company-background (last visited February 19, 2020).

26.     Moore did not exercise discretion and judgment as to matters of significant.

27.     To the contrary, Moore worked with his hands.

28.     Moore performed manual labor.

29.     Moore used hand tool on pipelines.

30.     Moore worked in the elements and would become dirty as a result of his work.

31.     Moore worked in dangerous conditions.

32.     Pipelines have the potential to explode.

33.     Pipelines can be dangerous.

34.     Moore does not work in an office.

35.     Moore does not manage a business unit.

36.     Moore cannot make decisions as to matters of significance that would impact overall business operations.

37.     Moore's decisions are limited to routine and manual tasks surrounding pipeline inspections for Maverick.

38.     Moore is heavily supervised by Maverick.

39.     Moore is required to follow Maverick policies and procedures.

40.     Moore reports to Maverick on a regular basis.

41.     Maverick determined the pay practice through which Moore is compensated.

42.     Maverick did not guarantee Moore a salary.

43.     Maverick did not provide Moore overtime pay.

44.     Maverick employed Moore for purposes of the FLSA.

45.     Maverick set Moore's schedule.

46.     Maverick required Moore to work over 40 hours in a week.

47.     Maverick typically scheduled Moore to work 10-hour minimum shifts, for as many as 7 days a week.

48.     Maverick keeps accurate records of the hours, or at least days, of Moore's work.

49.     Maverick required Moore to report his time to it.

50.     Maverick required Moore to report his expenses to it.

51.     Maverick approved Moore's time worked.

52.     Moore's work was production based.

53.     Moore's work was integral to the operation of Maverick's pipelines and crude transportation.

54.     Moore was prohibited from deviating from Maverick's quality standards.

55.     Moore is a blue-collar worker.

56.     Moore is not exempt under any white-collar exemption.

57.     Moore was not guaranteed a salary.

58.     Maverick cannot demonstrate that Moore was paid on a salary basis in accordance with the FLSA.

59.     Maverick cannot demonstrate that Moore was not its employee for purposes of the FLSA.

### FLSA VIOLATIONS

60.     Moore incorporates the preceding paragraphs by reference.

61.     As set forth herein, Maverick violated the FLSA by failing to pay Moore and the Putative Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

62.     At all relevant times, Maverick has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

63.     Maverick employed Moore and each member of the Putative Class.

64.     Maverick's pay policy denied Moore and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

65.     Maverick owes Moore and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

66.     Maverick knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Moore and the Putative Class is willful.

67.     Due to Maverick's FLSA violations, Moore and the Putative Class Members are entitled to recover from Maverick for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

68.     The improper pay practices at issue were part of a continuing course of conduct, entitling Moore and Putative Class Members to recover for all such violations, regardless of the date they occurred.

## COLLECTIVE ACTION ALLEGATIONS

69.     The Putative Class Members were subject to the same working conditions as Moore.

70.     All facts alleged as to Moore are hereby alleged to the Putative Class Members.

71.     The Putative Class Members are similarly situated based on Maverick's common pay policy.

72.     The Putative Class Members are similarly situated based on Maverick's common practices applied to all Putative Class Members.

73.     The Putative Class Members are similarly situated because Maverick's plan regarding the use and pay of Putative Class Members is similar.

74.     The Putative Class Members' primary job duties included inspecting oil and gas pipelines, storage facilities, and other construction and production projects as needed.

75.     Putative Class Members did not have any supervisory duties.

76.     Putative Class Members did not hire for fire employees.

77.     Putative Class Members did not exercise discretion and judgment as to matters of significant.

78.     To the contrary, Putative Class Members worked with their hands.

79.     Putative Class Members performed manual labor.

80.     Putative Class Members used hand tool on pipelines.

81.     Putative Class Members worked in the elements and would become dirty as a result of their work.

82.     Putative Class Members worked in dangerous conditions.

83.     Putative Class Members do not work in an office.

84.     Putative Class Members do not manage a business unit.

85.     Putative Class Members cannot make decisions as to matters of significance that would impact overall business operations.

86.     Putative Class Members' decisions are limited to routine and manual tasks surrounding pipeline inspections for Maverick.

87.     Putative Class Members are heavily supervised by Maverick.

88.     Putative Class Members are required to follow Maverick policies and procedures.

89.     Putative Class Members report to Maverick on a regular basis.

90.     Maverick determined the pay practice through which all Putative Class Members are compensated.

91.     Maverick did not guarantee the Putative Class Members a salary.

92.     Maverick did not provide the Putative Class Members overtime pay.

93.     Maverick employed the Putative Class Members for purposes of the FLSA.

94.     Maverick set the Putative Class Members' schedule.

95.     Maverick required the Putative Class Members to work over 40 hours in a week.

96.     Maverick typically scheduled Putative Class Members to work 10-hour minimum shifts, for as many as 7 days a week.

97.     Maverick keeps accurate records of the hours, or at least days, of the Putative Class Members' work.

98.     Maverick required the Putative Class Members to report their time to it.

99.     Maverick required the Putative Class Members to report their expenses to it.

100.    Maverick approved the Putative Class Members' time worked.

101.    Maverick approved the Putative Class Members' expenses.

102.    Separate from the day rate, the Putative Class Members were paid a per diem.

103.    The per diem was not considered wages.

104.    The Putative Class Members were paid other reimbursements.

105.    The reimbursements were not considered wages.

106.    The Putative Class Members' work was production based.

107.    The Putative Class Members' work was integral to the operation of Maverick's pipelines and crude transportation.

108.    The Putative Class Members were prohibited from deviating from Maverick's quality standards.

109.    The Putative Class Members are blue collar workers.

110.    The Putative Class Members are not exempt under any white-collar exemption.

111.    The Putative Class Members were not guaranteed a salary.

112.    Maverick cannot demonstrate that the Putative Class Members were paid on a salary basis in accordance with the FLSA.

- 8 -

113.    Maverick cannot demonstrate that the Putative Class Members were not its employees for purposes of the FLSA.

### JURY DEMAND

114.    Moore demands a trial by jury.

### RELIEF SOUGHT

115.    WHEREFORE, Moore prays for judgment against Defendant as follows:

a)  An Order designating the case as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b)  For an Order appointing Moore and his counsel to represent the interests of the Putative Class Members;

c)  For an Order finding Maverick is liable to Moore and the Putative Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d)  For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e)  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:  */s/ Michael A. Josephson*
Michael A. Josephson
Texas Bar No. 24014780
Federal ID 27157
Andrew W. Dunlap
Texas Bar No. 24078444
Federal ID 1093163
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
Federal ID 21615
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**