United States District Court
Southern District of Texas
**ENTERED**
October 15, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Chad Moore, individually and on behalf of all others similarly situated, § § § § | | |
| Plaintiffs, § | | |
| v. § | Civil Action H-20-591 | |
| § | | |
| Maverick Natural Resources, LLC, § | | |
| Defendant. § | | |

# Report and Recommendation on Motion to Compel Arbitration

In this collective action for unpaid wages, Maverick Natural Resources, LLC, has moved to compel Chad Moore to arbitration and to stay the action. (D.E. 29.) The court recommends that the motion be denied.

## 1. Background and Procedural Posture

Chad Moore filed this suit on February 20, 2020, individually and on behalf of all others similarly situated, seeking recovery of unpaid overtime wages. According to the live complaint, Maverick Natural Resources, LLC, (Maverick) did not pay overtime compensation to day-rate workers as required under the Fair Labor Standards Act (FLSA).

Moore moved to conditionally certify a class on July 29, 2020. (D.E. 27.) He asks the court to conditionally certify and send notice to:

> All current and former personnel, staffed through FIS Operations, LLC, working for or on behalf of Maverick Natural Resources, LLC and paid a day-rate without overtime during the past three years.

(D.E. 27 at 6.)

FIS Operations, LLC, or Frontier Integrity Solutions, (FIS) is a separate entity that provides personnel to Maverick, an oil and gas production operator. (D.E. 29-2 at 2 ¶ 2.) The relationship between Maverick and FIS is controlled by the Master Work Agreement, which states that FIS would maintain responsibility for all costs of its contractors. (D.E. 29-1 ¶¶ 4.1, 15.6.)

Neither party asserts that Maverick and Moore set the terms of their relationship in a written contract. Instead, FIS's Chief Executive Officer declared that FIS hired Moore as its employee in June of 2019. (D.E. 29-2 at 2 ¶ 3.) At that time, Moore executed several documents including an FIS Employee Handbook Acknowledgment and a Mutual Voluntary Arbitration and Class Action Waiver Agreement (FIS Arbitration Agreement). *Id.*

Based on the FIS Arbitration Agreement, Maverick argues that Moore is subject to mandatory arbitration. Maverick asks the court to compel Moore to arbitrate his claim and to stay the litigation. The court must consider the issue of arbitration before Moore's motion for conditional certification. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019).

*2. Analysis*

The court's analysis of an arbitration agreement involves two steps: (1) determine "whether the parties entered into *any arbitration agreement at all*" and (2) determine "whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Production Svcs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). The first determination is generally made based on state-law principles that govern contract formation. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). "Challenges to the existence—as opposed to the enforceability or validity or scope—of an agreement to arbitrate, are for a court to decide." *Vallejo v. Garda CL Sw., Inc.*, 948 F. Supp. 2d 720, 726 (S.D. Tex. 2013). The objective is to ensure that arbitration agreements are enforced according to their terms and the intentions of the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995).

The parties disagree about whether Maverick may compel Moore to arbitrate. Maverick asserts that Moore is estopped from refusing to arbitrate his FLSA claim under the terms of the FIS Arbitration Agreement. Moore argues that because Maverick is not a party to the FIS Arbitration Agreement, Maverick has no right to enforce it.

### A. Is Moore a party to an arbitration agreement?

Both parties have presented the court with the FIS Arbitration Agreement. (D.E. 29-2 at 5–9; D.E. 33-2.) The agreement was signed by an FIS representative and by Moore in June of 2019. Moore concedes that he agreed to arbitrate with FIS. He could have declined to arbitrate by completing an opt-out form pursuant to the instructions on the signature page of his agreement. Because he signed the form and did not opt out, Moore consented to and is a party to the FIS Arbitration Agreement.

### B. Can Maverick avail itself of the FIS Arbitration Agreement?

Maverick asserts that whether Moore's claim must be arbitrated is up to the arbitrator, not the court, because the FIS Arbitration Agreement that Moore signed expressly provides for delegation of questions of arbitrability to the arbitrator. While Moore signed the FIS Arbitration Agreement, Maverick did not. Moore argues that because Maverick is not an express party to the agreement, the court must decide arbitrability.

While this is ordinarily a question for the court, "the parties can enter into an arbitration agreement that delegates to the arbitrator the power to decide whether a particular claim is arbitrable." *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 278 (5th Cir. 2019), *cert. granted*, 2020 WL 3146679 (June 15, 2020). Courts should not assume that the parties agreed to delegate unless there is clear and unmistakable evidence of an arbitrability delegation. *Id.* at 279. The question is whether the parties intended to have an arbitrator determine whether a given claim should be arbitrated. *Id.* To answer this question, the court must look to the text of the delegation clause. *Id.*

The FIS Arbitration Agreement states:

3

> The Arbitrator, and not any federal, state, or local court or Company, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.

(D.E. 29-2 at 6.) There is no question about Moore's consent to this arrangement as to potential claims against FIS. Moore's undisputed consent and signature on the FIS Arbitration Agreement is clear and unmistakable evidence that Moore intended to delegate arbitrability as to claims against FIS.

The court must determine whether Moore also intended this delegation clause to apply to claims against a nonsignatory such as Maverick. State law governs contract interpretation. *Morrison*, 517 F.3d at 254. The parties agree that Texas law applies. Under Texas law, an arbitration agreement that is "silent about arbitrating claims against non-signatories does not unmistakably mandate arbitration of arbitrability in such cases." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 632 (Tex. 2018).

The FIS Arbitration Agreement is between Moore and FIS "and its affiliates." (D.E. 29-2 at 5.) Maverick is not named as an affiliate within this contract. The delegation clause does not expressly state that it applies to claims against nonsignatories. It does not mention third parties at all. Because the delegation clause does not address claims against third parties, it is not clear that Moore intended to delegate the question of arbitrability to an arbitrator as to claims against nonsignatories such as Maverick. Therefore, the court must decide arbitrability. *See Jody James*, 547 S.W.3d at 632 ("Even when the party resisting arbitration is a signatory to an arbitration agreement, questions related to the existence of an arbitration agreement with a non-signatory are for the court, not the arbitrator.").

### C. Can Maverick compel arbitration as a nonsignatory?

Maverick asserts that it may compel Moore to arbitrate under the terms of the FIS Arbitration Agreement. Maverick asks the court

4

to hold Moore accountable to his contract under the intertwined claims theory of equitable estoppel.

Under Texas law, "a person who has agreed to arbitrate disputes with one party may be required to arbitrate related disputes with non-parties." *Jody James*, 547 S.W.3d at 629. "Intertwined claims estoppel involves 'compel[ing] arbitration when a nonsignatory defendant has a "close relationship" with one of the signatories and the claims are intimately founded in and intertwined with the underlying contract obligations.'" *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (internal citations omitted) (quoting *In re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 193–94 (Tex. 2007)). "It applies when there is a 'tight relatedness of the parties, contracts, and controversies.'" *Id.* (quoting *JLM Indus., Inc. v. Stolt-Nielsen, SA*, 387 F.3d 163, 177 (2d Cir. 2004)).

Moore argues that, while the Fifth Circuit has predicted that Texas would adopt the intertwined claims theory, the state has never considered the viability of it. Thus, according to Moore, Texas does not recognize the intertwined claims theory. While the Texas Supreme Court has not explicitly adopted the intertwined claims theory, it has not disavowed it. *Jody James*, 547 S.W.3d at 639–40 (incorporating the Second Circuit's analysis of intertwined claims theory and determining that the parties before the Court had not shown the theory's applicability). Further, the Fifth Circuit's *Erie* guess in *Hays v. HCA Holdings, Inc.*, adopting the theory, is binding on this court. 838 F.3d at 611. The court must therefore determine whether the theory applies to Moore's claim against Maverick.

Whether the theory applies requires the court to determine whether Moore's claim is "intimately founded in and intertwined with the underlying contract obligations" and whether Maverick has a "close relationship" with FIS. *See Jody James*, 547 S.W.3d at 639. When "the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, [and] are 'factually intertwined' with the contract containing the arbitration agreement," the claim meets the test and is thus arbitrable. *Hays*, 838 F.3d at 610 (quoting *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d

5

688, 695 (Tex. App.—Houston [1st Dist.] 2014), *reh'g overruled* (July 29, 2014), *review denied* (Nov. 7, 2014)).

Some courts examining this issue have allowed a nonsignatory to compel arbitration by virtue of an employment agreement containing an arbitration clause. *See, e.g.*, *Castaneda v. Volt Mgmt. Corp.*, No. EP-19-CV-00338-FM, 2020 WL 2308699, at *4–5 (W.D. Tex. May 8, 2020) (finding intertwined claims where both the employment application and offer letter gave notice that accepting employment bound the plaintiff to arbitration and the plaintiff explicitly consented to the employment terms as written); *Hays*, 838 F.3d at 613 (noting that the plaintiff's wrongful termination claims "intertwined with the underlying contractual obligations of the [employment] [a]greement," which included an arbitration clause); *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 362 (2d Cir. 2008) (determining that a nonsignatory may compel arbitration as to a claim for specific performance of a contract when that contract contained an agreement to arbitrate and the nature of the lawsuit accused the nonsignatory of being a party to the contract).

Here, Moore signed several agreements with FIS, including an FIS Employee Handbook Acknowledgment and the FIS Arbitration Agreement. (D.E. 29-2 at 2 ¶ 3.) The contract before the court is the FIS Arbitration Agreement. (D.E. 29-2 at 5–9.) This agreement does not govern the terms of Moore's employment. In fact, it applies to any claims against FIS, "whether or not arising out of Employee's employment." (D.E. 29-2 at 5.) It then goes on to outline arbitration procedures, venue, and related matters. (D.E. 29-2 at 5–9.) The FIS Arbitration Agreement does not contain Moore's terms of employment, does not set work rules or conditions, and does not set his pay rate, or the policy under which he would be paid. In short, it has no bearing on any claim or defense in this case. Moore's FLSA claims are not intertwined in any way with the agreement containing the arbitration clause.

In arguing their points, both parties have referenced this court's decision in *Tuggle v. Rockwater Energy Sols., Inc.*, No. CV H-18-4746, 2019 WL 7040330 (S.D. Tex. Dec. 3, 2019), *adopted by* No. CV H-18-4746, 2019 WL 6971660 (S.D. Tex. Dec. 19, 2019). That case is

6

factually distinct. In *Tuggle*, the contract in question contained both the terms of employment and an arbitration clause. *Id.* at *4. It set the pay rate, defined the employment relationship with the nonsignatory defendant, and expressly named that defendant as the employer. *Id.*

Because Maverick has not shown the claims in this lawsuit are intertwined with the FIS Arbitration Agreement, the court need not analyze the closeness of the relationship between Maverick and FIS.

### D. Can Maverick compel arbitration as a third-party beneficiary?

Maverick also claims that it may compel arbitration as a third-party beneficiary to the FIS Arbitration Agreement. Under Texas law, an arbitration agreement may also be enforced by a third-party beneficiary "so long as 'the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit.'" *Jody James*, 547 S.W.3d at 635 (quoting *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006)). The intent must be "clearly and fully spelled out." *Id.* (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). As discussed above, the FIS Arbitration Agreement makes no mention of Maverick. Nothing in the arbitration contract spells out the intention that Maverick receive any benefit. Maverick is not a third-party beneficiary and thus cannot compel arbitration as one.

### 3. Conclusion

Maverick has not shown that Moore agreed to arbitrate and the court recommends that its motion to compel arbitration and stay the case be denied.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal

conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on October 15, 2020.

_____
Peter Bray
United States Magistrate Judge