United States District Court
Southern District of Texas

**ENTERED**

October 15, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Chad Moore, individually and | § | |
| on behalf of all others similarly | § | |
| situated, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action H-20-591 |
| | § | |
| Maverick Natural Resources, LLC, | § | |
|     Defendant. | § | |

## Report and Recommendation
## on Motion for Conditional Certification

Chad Moore has moved to conditionally certify a class of workers in this action for unpaid compensation. (D.E. 27.) The court recommends that the motion be granted in part.

### 1. Background and Procedural Posture

Chad Moore filed this suit on February 20, 2020, individually and on behalf of all others similarly situated, seeking recovery of unpaid overtime wages. According to the live complaint, Maverick Natural Resources, LLC, (Maverick) failed to pay overtime compensation to day-rate workers as required under the Fair Labor Standards Act (FLSA).

Moore moved to conditionally certify a class on July 29, 2020. (D.E. 27.) He asks the court to conditionally certify and send notice to:

> All current and former personnel, staffed through FIS Operations, LLC, working for or on behalf of Maverick Natural Resources, LLC and paid a day-rate without overtime during the past three years.

(D.E. 27 at 6.) FIS Operations, LLC, also known as Frontier Integrity Solutions, (FIS) provided personnel to Maverick, an oil and gas production operator. (D.E. 30-1 at 2 ¶ 2.)

To show Maverick's unfair labor practices, Moore attached to his motion for conditional certification:

- the declarations of four opt-in plaintiffs (D.E. 27-1, 27-2, 27-3, 27-4),
- a blank time sheet (D.E. 27-5),
- his Specific Project Inspector Pay Sheet (D.E. 27-6), and
- two paystubs for a fifth opt-in plaintiff. (D.E. 27-7.)

In its response, Maverick asserts that not all personnel staffed by FIS are aggrieved, that Moore is not similarly situated to the putative class members, and that Moore did not provide sufficient evidence of a desire to opt-in. (D.E. 30.)

## 2. *Legal Standard*

The FLSA requires covered employers to pay employees overtime for any workweeks longer than forty hours. 29 U.S.C. § 207(a). Employees can sue employers violating FLSA regulations both individually and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). These similarly-situated individuals have the option to join the collective action. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008).

District courts have discretion to send notice to potential opt-in plaintiffs and many courts analyze the certification process using what is commonly known as the "*Lusardi"* method. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 & n.9 (5th Cir. 2019) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). Under *Lusardi*, the district court first determines whether individuals are similarly situated at the notice stage, generally based only on pleadings and affidavits. *Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). This "fairly lenient standard . . . typically results in conditional certification of a representative class." *Id.* at 1214.

The *Lusardi* method later requires a second determination upon a defendant's motion to decertify the class after discovery is complete. *Mooney*, 54 F.3d at 1214. Conditional certification of FLSA

actions is generally favored because it often reduces litigation costs and promotes judicial efficiency. *Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 466 (S.D. Tex. 2012).

### 3. *Analysis*

"At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010). For conditional certification, the plaintiffs do not need to show that the employer violated the law, only that similarly-situated employees allege similar violations. *Id.* at 802. The "determination centers on whether a factual nexus exists between the proposed members of the class such that the grouping promotes judicial efficiency." *Loy v. Rehab Synergies, LLC*, 366 F. Supp. 3d 847, 853 (S.D. Tex. 2019).

#### A. *Aggrieved Individuals Exist*

"Under this first element, the plaintiffs need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012). Since the original complaint was filed in February 2020, thirteen workers have consented to join the suit. (D.E. 19–22, 24, 34, 36, 38.) Along with Moore, three other FIS employees working for Maverick declared that they regularly worked more than forty hours per week, did not receive overtime, and were paid a day rate. (D.E. 27-1, 27-2, 27-3, 27-4.) They all declared that they know of others interested in joining the suit.

Although Maverick argues that not *all* personnel staffed by FIS are aggrieved, this is not required at the conditional stage. *See Heeg*, 907 F. Supp. 2d at 862 ("The plaintiffs' burden at the conditional-certification stage is low."). Moore has met his burden to show that other aggrieved individuals exist.

### B. Similarly Situated to Plaintiff

To demonstrate the second element, plaintiffs must show that putative class members were affected by a common policy, plan, or practice. *McKnight*, 756 F. Supp. 2d at 803–04 (collecting cases). Potential class members should be similarly situated in terms of job requirements and payment provisions but need not be identical. *Heeg*, 907 F. Supp. 2d at 862.

Four FIS employees working for Maverick declared that they provided inspection services for oil production despite having different job titles—production specialist, operator, and inspector. (D.E. 27-1, 27-2, 27-3, 27-4.) Maverick argues that these distinctions, along with differences in the their per diem allowances and bonuses, prevent employees from being "similarly situated."

#### i.   Differences in job titles

Maverick argues that the opt-in plaintiffs are not similarly situated to Moore because they had different job titles and work requirements. Moore attached the declarations of four opt-in plaintiffs to its motion. They declared their job titles to be: welding inspector, operator, production specialist, and field operator. (D.E. 27-1 ¶ 2; 27-2 ¶ 2; 27-3 ¶ 2; 27-4 ¶ 2.) FIS's Chief Executive Officer declared that Maverick considered the operators to be production specialists. (D.E. 30-2 at 4 ¶ 10.) According to him, the job title of "operator" does not exist. *Id.* Maverick's Director declared that inspectors "worked with crews on construction projects" and that production specialists "worked individually operating drilling equipment." (D.E. 30-1 at 3 ¶ 6.) The three opt-in plaintiffs performing production specialist work[1] declared that they inspected and monitored the work performed by different equipment—oil wells, electrical systems, and plant machinery. (D.E. 27-2 ¶ 12, 27-3 ¶ 12, 27-4 ¶ 12.) Similarly, Moore, an inspector, inspected and monitored the work performed by construction crews. (D.E. 27-1 ¶ 12.) Based on their observations and their conversations with other employees, two

---

[1] This includes the opt-in plaintiffs that describe themselves as "operators."

of the opt-in plaintiffs declared that production specialists and inspectors performed similar work. (D.E. 27-2 ¶ 13, 27-3 ¶ 13.)

All four opt-in plaintiffs described their responsibilities as inspecting the tools and work of their assigned projects to ensure that they met Maverick's specifications. (D.E. 27-1 ¶ 12; 27-2 ¶ 12; 27-3 ¶ 12; 27-4 ¶ 12.) All four declared that they were not required to have an advanced degree. (*Id.* ¶ 18.) Maverick controlled all aspects of their work. (*Id.* ¶¶ 7, 10–11, 19–21.) Despite differences in their official titles, the opt-in plaintiffs describe similar job responsibilities that are sufficient for purposes of conditional certification at this lenient stage.

Moreover, the differences in job titles are not so material to Moore's claim for unpaid compensation that they negate the judicial efficiency of conditionally certifying a class based on a common pay policy. In his amended complaint, Moore alleges that Maverick employed a compensation scheme that regularly required employees to work more than forty hours per week but never paid them the overtime compensation required under the FLSA. (D.E. 26 ¶ 61.) Because liability here is based solely on Maverick's alleged compensation scheme, it "can be determined collectively without limiting the class to a specific job position." *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-CV-330-RP, 2015 WL 7075971, at *3 (W.D. Tex. Oct. 5, 2015).

The declarations of opt-in plaintiffs all describe the same pay practice regardless of their job title:

- Maverick paid them a flat sum for each day that they worked (D.E. 27-1 ¶ 7, 27-2 ¶ 7, 27-3 ¶ 7, 27-4 ¶ 7);
- the rate was not dependent on the number of hours worked each day or workweek (*Id.*);
- the rate was non-negotiable (*Id.*);
- Maverick required them to work substantial overtime (*Id.* ¶ 17); and
- Maverick never paid overtime compensation. (*Id.* ¶ 14.)

Moore also provided a time sheet that explicitly states FIS employees are paid per day. (D.E. 27-5.) Moore's inspector pay sheet and the pay statement of a "production operator" show that both opt-in plaintiffs were paid a day rate despite their different job titles.

(D.E. 27-6, 27-7.) Moore has shown that workers who describe themselves as inspectors, operators, and production specialists were all affected by the same compensation scheme. Because it is unclear exactly how many job positions are employed by Maverick through FIS, the court recommends limiting the class to workers that Moore has shown to be subject to a single pay policy, that is inspectors, operators, and production specialists.

### ii. Differences in pay rate

Maverick does not disagree that each title was paid a day rate. Instead, it argues that the pay scheme between production specialists and inspectors is not a single policy because: 1) some inspectors received a per diem allowance, while production specialists did not, and, 2) if a production specialist worked more than twelve hours in one day, they received "premium pay" of $750 per day instead of their normal day rate. (D.E. 30-2 at 4 ¶ 9.)

That each employee's pay may be subject to slight differences does not prohibit class certification unless the court cannot find a "reasonable basis to infer that the defendant had 'a common plan or practice requiring the class to work uncompensated overtime.'" *Gibson v. NCRC, Inc.*, No. CIV.A. H-10-1409, 2011 WL 2837506, at *6 (S.D. Tex. July 18, 2011). "[T]he need for individual factual determinations is not fatal to certification of a FLSA collective action." *Id.* at *5−6 (collecting cases).

Several courts have found conditional certification proper even when employees were paid different rates. *See, e.g., Baucum v. Marathon Oil Corp.*, No. CV H-16-3278, 2017 WL 3017509, at *8 (S.D. Tex. July 14, 2017) (determining that the three employees declaring they "were all paid a day rate, that they regularly worked more than forty hours a week, and that they were not paid overtime" was sufficient evidence of similar payment provisions for conditional certification); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 992−93, 996 (E.D. Tex. 2011) (finding the same pay policy affected opt-in plaintiffs who were subject to different pay rates); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (finding that employees were all paid less than minimum wage and

thus were all subject to the same pay policy, although they received different amounts of pay); *Aguilar v. Complete Landsculpture, Inc.*, No. CIV.A.3:04 CV 0776 D, 2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004) (granting conditional certification for employees subject to a "block rate" payment scheme and opining "the fact that [different positions] had somewhat different duties and rates of pay [was] immaterial"). "Ultimately, there must be 'some identifiable facts or legal nexus that bind the claims so that hearing the cases together promotes judicial efficiency.'" *Simmons v. T-Mobile USA, Inc.*, No. CIV A H-06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007) (quoting *Aguirre v. SBC Commc'ns, Inc.*, No. CIV.A. H-05-3198, 2006 WL 964554, at *5 (S.D. Tex. Apr. 11, 2006)).

Maverick concedes that "FIS employees performing work for Maverick" "all received day rates." (D.E. 30-2 at 4 ¶ 9.) The four opt-in plaintiffs each declared that:

- the day rate they received "was paid without regard to the number of hours [they] worked" (D.E. 27-1 ¶ 7; 27-2 ¶ 7; 27-3 ¶ 7; 27-4 ¶ 7);
- they were "paid a day rate regardless of the particular job or location [they] worked" (*Id.*);
- "Maverick dictated the amount of the day rate" (*Id.*);
- they were "only paid based on the number of days [they] worked" (*Id.* ¶ 8); and
- Maverick required them to work substantial overtime, often between fifty and ninety hours per week. (*Id.* ¶ 17.)

These allegations are enough to bind the claims together in a way that promotes judicial efficiency. *See, e.g.*, *Akins v. Worley Catastrophe Response, LLC*, No. CIV.A. 12-2401, 2013 WL 1412371, at *6–7 (E.D. La. Apr. 8, 2013) ("Despite some individual variations in the daily rate of pay and/or job duties, plaintiffs have made substantial allegations that [the defendant] had a single policy, applicable to all claims evaluators who routinely worked more than 40 hours per week, of paying them a flat daily rate without any guaranteed salary and without paying for overtime work.").

At this stage, Moore sufficiently alleged that a common practice affected putative class members and a collective grouping could promote judicial efficiency.

### C.  Desire to Opt-in[2]

The third element requires a showing that there is at least some interest to opt-in to the lawsuit. *Walker*, 870 F. Supp. 2d at 472. Because the litigation has already attracted several individuals to file a notice of consent to join, Moore has met this requirement. *See id.*; *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *8 (S.D. Tex. Nov. 19, 2007).

### 4.  Conclusion

Under the lenient standard for conditional certification, the court recommends that Moore's motion to certify be granted as follows:

> All current and former personnel, staffed through FIS Operations, LLC, working for or on behalf of Maverick Natural Resources, LLC, performing the job duties of a Production Specialist, Operator, or Inspector, and paid a day rate without overtime during the past three years.

To the extent that Maverick has contact information for putative class members, the court orders Maverick to provide Moore with the names and contact information for all putative class members.

The court orders the parties to confer about timelines and content of the notice and to submit a proposed notice to the court within seven days. To the extent that the parties disagree on particular details, the court orders the parties to file a joint status report concerning their disagreements within seven days. If necessary, the court will schedule a hearing.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file

---

[2] There is some debate about whether the court is required to analyze this third factor. *See Jones v. Cretic Energy Svcs., LLC*, 149 F. Supp. 3d 761, 768 (S.D. Tex. 2015). Because the parties seem to agree that the third factor is relevant, and because the third factor is met here, the court extends its analyses to the third factor.

objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on October 15, 2020.

_____

Peter Bray
United States Magistrate Judge